UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
STEPHANIE E. FALCO,

               Plaintiff,              <u>MEMORANDUM & ORDER</u>
                                           21-CV-02999 (JS)

    -against-

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
-------------------------------X
APPEARANCES
For Plaintiff:      Eddy Pierre Pierre, Esq.
                  Pierre Pierre Law, P.C.
                  211 East 43rd Street, Suite 608
                  New York, New York  10017

For Defendant:      Kevin Murphy, Esq.
                  United States Attorney's Office
                  Western District of New York
                  c/o SSA/OGC
                  601 East 12th Street, Room 965
                  Kansas City, Missouri  64106

SEYBERT, District Judge:

        Plaintiff Stephanie E. Falco ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (hereinafter, the "Act"), 42 U.S.C. § 405(g), challenging the denial of her Social Security Disability Insurance Benefits by the Commissioner of Social Security (hereinafter, the "Commissioner"). (<u>See generally</u> Compl., ECF No. 1.)  Pending before the Court are Plaintiff's motion for judgment on the pleadings (Pl. Mot., ECF No. 13), Defendant's cross-motion for judgment on the pleadings (Comm'r Mot., ECF No. 16), and Plaintiff's reply (Pl. Reply, ECF

No. 17).  For the following reasons, Plaintiff's motion is DENIED, and Commissioner's motion is GRANTED.

BACKGROUND[1]

I.  Procedural History

On February 12, 2019, Plaintiff completed an application for disability insurance benefits alleging disability as of October 20, 2017, due to rheumatoid arthritis and fibromyalgia. (R. at 97, 235.)  After Plaintiff's claim was denied, she requested a hearing before an Administrative Law Judge ("ALJ").  (Id. at 130-31.) On November 13, 2020, the hearing was held telephonically. (Id. at 25).   At this hearing, Plaintiff, accompanied by a representative, appeared before ALJ Laura Michalec Olszewski. (Id. at 25-55.)  Carrol Warren, a vocational expert ("VE"), also testified at the hearing. (Id. at 27.)  After the hearing, on December 1, 2020, the ALJ issued an unfavorable decision, finding Plaintiff not disabled and denying her application.  (Id. at 7-22.)  On December 8, 2020, Plaintiff requested review of the ALJ's decision by the Appeals Council, but her request was denied.  (Id. at 1-6.)

_____

[1] The background is derived from the administrative record filed by the Commissioner on October 25, 2021.  (See ECF No. 10.)  For purposes of this Memorandum and Order, familiarity with the administrative record is presumed.  The Court's discussion of the evidence is limited to the challenges and responses raised in the parties' briefs.  Hereinafter, the administrative record will be denoted "R." When citing to the administrative record, the Court will use the relevant Bates number(s) provided therein.

Plaintiff initiated this action, appealing the Agency's final decision, on May 27, 2021. (See Compl.) On April 22, 2022, Plaintiff moved for judgment on the pleadings. (See Pl. Mot.) On June 17, 2022, the Commissioner cross-moved for judgment on the pleadings. (See Comm'r Mot.) On July 11, 2022, Plaintiff filed her reply. (See Pl. Reply.)

II.  Evidence Presented to the ALJ

The Court first summarizes Plaintiff's testimonial evidence and employment history, before turning to her medical records and the VE's testimony.

A. Testimonial Evidence and Employment History

Plaintiff was born in 1978. (R. at 236.) She completed high school and two years of college. (Id. at 262.) From 2006 until 2013, Plaintiff worked both as a manager and cook at her then-husband's, now ex-husband's (hereinafter, the "Husband"), pizzeria (hereinafter, the "Pizzeria"). (Id. at 250-52, 262.) Plaintiff also intermittently worked as a cook at a different restaurant from 1996 until 2012 on an as-needed basis. (Id.)

At the time of the November 13, 2020 hearing, Plaintiff was 42 years old. (Id. at 30.) She testified she had not sustained any income since 2014, after the sale of the Pizzeria. (Id. at 33.) Previously, at the Pizzeria, Plaintiff worked primarily as the chef, but also did counter work, answered the phones, and did the ordering and the scheduling. (Id. at 34.) Plaintiff also

3

testified she worked at Modern Snack Bar performing primarily the same type of jobs as at her Husband's Pizzeria. (Id.)

Upon questioning by the ALJ, Plaintiff testified that, during a typical day prior to December 31, 2018, the date last insured, Plaintiff would wake up in the morning feeling very stiff, requiring her to take approximately one half-hour to get out of bed. (Id. at 35.) Plaintiff testified she did not walk her dogs; instead, she let them out into the backyard. (Id.) Next, she stated she would then sit for two-to-three hours before she felt able to get up and move around. (Id. at 35-36.) Afterward, she would sit on the couch, watch TV, have her coffee, and wait to "feel human" again. (Id. at 36.) Plaintiff further testified she would alternate performing household chores with sitting back down and watching TV until three-to-four P.M., when she would have her first meal. (Id. at 37.) Plaintiff stated she would either make herself an English muffin or sandwich for dinner, or her Husband would bring home dinner. (Id. at 37-38.)

Plaintiff continued testifying she did not get much accomplished within a full day, but instead spread her chores out across the week. (Id. at 38.) She asserted she would go grocery shopping by herself for one or two items and go with either a friend, her Husband or her father if she needed more than that. (Id.) At the time, Plaintiff was not being treated for any kind of mental health concerns. (Id. at 40.)

4

On direct examination, Plaintiff explained she had been limited when it came to her driving ability. (<u>Id.</u> at 41.) Plaintiff testified that when her arthritis flared, she had difficulty grasping the steering wheel and required help to travel. (<u>Id.</u>) Similarly, Plaintiff asserted that when she sat and watched TV, she required a recliner or a loveseat to elevate and take pressure off her knees and hips. (<u>Id.</u>) Plaintiff then estimated that her rheumatoid arthritis flares up approximately once to twice a week and could last from one to three days. (<u>Id.</u> at 41-42.)

In addition to Plaintiff's testimony, Plaintiff also provided a third-party function report in which her Husband provided his opinions regarding Plaintiff's physical capabilities and condition. (<u>Id.</u> at 275.) In substance, this report reiterated the pains, limitations, and daily activates Plaintiff testified to at the hearing. (<u>Id.</u> at 275-82.)

B. <u>Medical Evidence</u>

In February 2017, prior to Plaintiff's alleged date of disability, Plaintiff began seeing her treating doctor, Dr. Roy Prashad (hereinafter, "Dr. Prashad"), for treatment for her rheumatoid arthritis. (<u>Id.</u> at 355-77.) On February 21, 2017, Plaintiff received an MRI of her right shoulder revealing mild to moderate subacromial/subdeltoid bursitis and small joint effusion with synovial thickening and debris in the axillary recess consistent with synovitis. (<u>Id.</u> at 357.) On September 14, 2017,

Plaintiff saw Dr. Prashad for a follow-up appointment. (Id. at 368.) Dr. Prashad noted: Plaintiff had a lot of stress; Plaintiff had increased joint pain and swelling; that Plaintiff's medication, Simponi, was working well until her recent flare; and, Plaintiff had stopped taking methotrexate due to a recent illness and had not restarted taking the drug. (Id.) Dr. Prashad also noted Plaintiff had swelling and tenderness in her wrists and fingers. (Id.) Finally, in the lab result portion of Dr. Prashad's report, there were four out-of-range results as indicated through testing. (Id. at 370.)

On October 2, 2017, Dr. Prashad completed a Medical Report for Determination of Disability. (Id. at 363.) In this report, Dr. Prashad notated Plaintiff: was limited to lifting less than ten pounds, carrying less than ten pounds, standing less than two hours a day, walking less than two hours a day, and sitting less than six hours a day, and, Plaintiff had manipulative limitations in her right and left upper extremities with additional limitations in her ability to stoop, bend, crouch, squat, and climb. (Id.) Dr. Prashad also concluded Plaintiff was limited in her ability to tolerate dust, fumes, extremes in temperatures, and exposure to heights or machinery. (Id.)

On December 7, 2018, during the relevant period, Plaintiff saw Dr. Sanjay Godhwani (hereinafter, "Dr. Godhwani") for rheumatoid arthritis. (Id. at 379.) In what is labeled the

6

subjective portion of his clinical report, Dr. Godhwani described Plaintiff's relevant medical history, writing Plaintiff had been initially diagnosed in 2006 with rheumatoid arthritis and had swelling and pain in her hands and fingers, as well as knee pain and stiffness.  (Id.)  Dr. Godhwani also wrote that Plaintiff had difficulty waking up, elbow pain, and difficulty straightening out her arm.  (Id.)  He notated Plaintiff had failed a multitude of different treatments and was now on Simponi for three years, but Plaintiff felt like it was wearing off.  (Id.)  Dr. Godhwani further stated that, to deal with flare ups, Plaintiff normally took steroids, which helped.  (Id.)

In what is labeled the objective portion of his clinical report, Dr. Godhwani noted Plaintiff had a limited range of motion and tenderness to her knee, as well as swelling of her hands and pain upon palpitation.  (Id. at 379-80.)  He further noted: Plaintiff's wrists had no swelling or tenderness; her sensation, strength, and reflexes were normal; and, Plaintiff could ambulate within normal limits.  (Id. at 380.)

Plaintiff continued to visit Dr. Godhwani after the relevant period ended on December 31, 2018, until October of 2020. (Id. at 381-400, 408-39.)  On January 18, 2019,[2] Plaintiff reported

---

[2] Evidence after the date last insured may be considered because: "[E]vidence bearing upon an applicant's condition subsequent to the [date last insured] is pertinent evidence in that it may disclose the severity and continuity of impairments existing

she: felt better with vitamin D; had less pain; finished her steroids; and was taking Aleve as necessary. (Id. at 381.) On February 20, 2019, Plaintiff reported: doing well on Olumiant; her swelling had decreased; and, her morning stiffness was down to between thirty minutes to one hour. (Id. at 383.)

On April 23, 2020, Dr. Godhwani completed a Medical Source Statement concerning his opinion regarding Plaintiff's diagnoses and restrictions. (See id. at 405-07.) He reported he diagnosed Plaintiff with chronic rheumatoid arthritis using laboratory testing. (Id. at 405.) He then identified the areas of pain, swelling, and inflammation which included the lumbosacral spine, cervical spine, thoracic spine, chest, shoulders, arms, hands, fingers, ancles, knees, and feet. (Id.) Dr. Godhwani stated Plaintiff's symptoms included multiple tender points, morning stiffness, chronic fatigue, and crepitus. (Id.) The treatment for Plaintiff's rheumatoid arthritis was biologics including Xeljanz, with which she was doing well. (Id. at 405-06.)

Dr. Godhwani then opined as to the daily limitations Plaintiff faced within the workday. (Id. at 406.) He noted

_____

before the earning requirement date. . . ." Durakovic v. Comm'r of Soc. Sec., No. 17-CV-0894, 2018 WL 4039372, at *5 (N.D.N.Y. May 30, 2018), report and recommendation adopted, No. 17-CV-0894, 2018 WL 4033757 (N.D.N.Y. Aug. 23, 2018) (alteration in original) (quoting Lisa v. Sec'y of Dep't of Health & Human Servs. of U.S., 940 F.2d 40, 44 (2d Cir. 1991)).

Plaintiff was likely to be off task for more than twenty-five percent of the workday and could sit, stand, and walk for less than two hours each. (Id.) Additionally, he represented that Plaintiff would have to rest for a portion of each workday adding up to a total of two-and-a-half hours of rest within an eight-hour workday. (Id.) Further, he hypothesized these unscheduled breaks would happen one to three times during an eight-hour workday and would require twenty-to-thirty-minute periods of rest. (Id. at 407.)

Dr. Godhwani also stated Plaintiff could never lift and carry 21-50 pounds, could occasionally carry 11-20 pounds, and could frequently carry 1-10 pounds. (Id. at 406.) Further, he found Plaintiff could: frequently use both hands for grasping and twisting objects; frequently use her fingers on both hands for fine manipulation; and, occasionally use both arms for reaching both laterally and overhead. (Id.) Finally, Dr. Godhwani concluded Plaintiff would likely be absent from work due to her impairments more than four times a month. (Id. at 407.)

C. The VE's Testimony

At the hearing, the VE testified to Plaintiff's past work history. (Id. at 47-50.) She classified Plaintiff's previous work as a three-part composite job. (Id. at 47-49.) The first part was classified as a short-order cook, which is a semi-skilled job requiring light physical demands as generally performed, but

medium physical demand as actually performed.  (Id. at 47-48.)
The second part was classified as a counter-attendant, which is an
unskilled job with light physical demands as generally described,
but medium physical demands as actually performed.  (Id. at 48.)
Finally, the third part was classified as a restaurant manager,
which is a skilled job with a light physical demand.  (Id. at 48-
49.)

        The ALJ posited hypotheticals to the VE.  (Id. at 49.)
The ALJ established a hypothetical individual with Plaintiff's age
and education in conjunction with the past job experience as
described.  (Id.)  The ALJ assumed this individual could lift or
carry twenty pounds occasionally and ten pounds frequently. (Id.)
Further, this individual could sit, stand, or walk for six hours
in an eight-hour workday, occasionally climb ramps and stairs, but
could never climb ladders or scaffolds.  (Id.)  This individual
could also occasionally balance and stoop, but should never kneel,
crouch, or crawl.  (Id.)  Said individual could frequently reach,
push, and pull up to the limits of light work and could frequently
finger, handle, and feel.  (Id.)  When the VE was asked if this
hypothetical individual could perform Plaintiff's past work, the
VE responded that the hypothetical individual could not.  (Id. at
49-50.)

        The ALJ next asked whether this hypothetical individual
could perform any other work within the American economy.  (Id. at

50.)  In response, the VE established three examples of work that could be performed:  (1) cashier, a light and unskilled job of which there are approximately 575,000 positions in the national economy; (2) office helper, a light and unskilled job of which there are approximately 13,800 positions in the national economy; and (3) ticket taker, a light an unskilled job of which there are 5,200 positions in the national economy.  (Id.)

The ALJ then proffered a second hypothetical individual who could work only at the sedentary exertional level with the same work experiences and attributes as previously established with the first hypothetical individual.  (Id.)  All the limitations remained the same as the first hypothetical individual except that this new individual could stand or walk for only two hours in an eight-hour workday, could lift or carry only ten pounds occasionally, and whose frequent reaching, pushing, and pulling could only be up to the limits of sedentary work.  (Id. at 50-51.)

The VE testified that this hypothetical individual could not perform the Plaintiff's past work, but provided three examples of work that this individual could perform.  (Id. at 51.) The first was an addresser, a sedentary unskilled job of which there are approximately 3,000 positions in the national economy.  (Id.)  The second was a document preparer, another sedentary unskilled job of which there are approximately 19,000 positions in the national economy.  The third was a call-out operator, a sedentary unskilled

11

job of which there are 3,300 positions in the national economy. (Id.)

Finally, the ALJ asked the VE to opine on employer tolerance regarding time off-task. (Id. at 51-52.) The VE explained that an employer will likely tolerate a maximum of fourteen percent time off-task; however, if an individual is off-task for more than fifteen percent of the time, employment would not be available. (Id. at 52.) Further, the VE testified that, typically, an employer will tolerate only a maximum absence of one day per month; any absences in excess of one day would be work preclusive. (Id.)

In a December 1, 2020 decision, the ALJ found that Plaintiff was not disabled. (See id. at 10-18.) On April 28, 2021, the Social Security Administration's Appeals Council denied Plaintiff's request for review, and the ALJ's determination became the Commissioner's final decision. (Id. at 1-3.)

## Discussion

### I.   Standard of Review

In reviewing the final decision of the Commissioner, a district court must find an ALJ's factual findings to be "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Under this substantial-evidence standard, "a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the

12

[ALJ's] factual determinations." <u>Biestek v. Berryhill</u>, 587 U.S. 97, 102 (2019) (first alteration in original).  The requisite threshold for evidentiary sufficiency "is not high" as the substantial evidence standard merely requires "more than a mere scintilla" of evidence.  <u>Id.</u> at 103; <u>Consol. Edison Co. of N.Y. v. N.L.R.B.</u>, 305 U.S. 197, 229 (1938).  This standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consol. Edison Co. of N.Y.</u>, 305 U.S. at 229.  If this low evidentiary burden is met, "[t]he court may not substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon a <u>de novo</u> review." <u>Jones v. Sullivan</u>, 949 F.2d 57, 59 (2d Cir. 1991) (alteration in original).

II.  <u>The ALJ's Decision and the Five-Step Disability Analysis</u>

The ALJ found that Plaintiff met the insured-status requirements for her claim through December 31, 2018 (hereinafter, the "Date Last Insured").  (R. at 10.)  The ALJ then applied the five-step disability analysis (<u>see</u> <u>infra</u>).  Ultimately, pursuant to 20 C.F.R. § 404.1520 (hereinafter "Social Security Regulations"), the ALJ concluded that Plaintiff was not disabled from October 20, 2017, the alleged disability onset date (hereinafter, the "Onset Date"), through the Date Last Insured.  (R. at 10.)

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity during the period between her alleged Onset Date and the Date Last Insured.  (Id. at 12.)  At step two, the ALJ found Plaintiff had three severe impairments: (1) rheumatoid arthritis; (2) fibromyalgia; and (3) bursitis of the shoulder.  (Id.)

At step three, the ALJ found the Plaintiff "did not have an impairment or combination of impairments that met or medically equated the severity of one of the listed impairments" in Appendix 1 of the Social Security Regulations.  (Id.)  The ALJ stated the "medical evidence of record does not reveal signs, symptoms, or laboratory findings indicating any impairment or combination of impairments severe enough to meet the criteria of any listed impairment."  (Id. at 13.)  Further, she stated no medical source has rendered any findings or opinions consistent with the requisite criteria to reflect a sufficiently severe impairment.  (Id.)

At step four, the ALJ found Plaintiff had the residual functional capacity (hereinafter, "RFC") to perform light work as defined by the Social Security Regulations, albeit with some additional limitations.  (Id.)  The ALJ stated Plaintiff could work at the light exertional level, meaning she: (1) could lift and/or carry up to twenty pounds occasionally and ten pounds frequently; (2) could sit, stand, and/or walk for six hours in an eight-hour work day; (3) could occasionally climb stairs and ramps,

but could never climb ladders and scaffolds; (4) could occasionally balance or stoop but could never kneel, crouch, or crawl; (5) could frequently reach, push, and pull up to the limits of light work; and (6) could frequently handle, finger, and feel. (Id.) In making these findings, the ALJ considered all symptoms to the extent they could reasonably be accepted as consistent with the objective medical evidence, prior medical administrative findings, and other evidence, based upon the evidentiary requirements of the Social Security Regulations. (Id. at 14.)

After considering the evidence, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements regarding the intensity, persistence, and limiting effects were not fully consistent with the other evidence in the record. (Id.) Additionally, the ALJ stated the limitations presented by both Dr. Prashad and Dr. Godhwani were inconsistent, overly restrictive, and unsubstantiated by their own contemporaneous treatment reports. (Id. at 15.)

The limitations provided by Dr. Prashad were found to be inconsistent due to the presence of multiple contemporaneous reports indicating Plaintiff was positively responding to treatments. (Id.) The contemporaneous treatment reports the ALJ relied upon stated Plaintiff felt well on her medication until a recent flare, indicating Plaintiff's symptoms were largely

responding to treatment. (Id.) Dr. Prashad also suggested Plaintiff should limit her exposure to avoid respiratory irritants, a limitation which the ALJ found had no evidentiary justification. (Id.) Finally, the ALJ noted, despite finding Plaintiff suffered from swelling and stiffness, Dr. Prashad did not opine on any manipulative limitations. (Id.) Based upon these findings, the ALJ concluded Dr. Prashad's opinion was unpersuasive. (Id.)

The ALJ found the limitations provided by Dr. Godhwani as inconsistent because the Doctor's opinion was also unsubstantiated by contemporaneous treatment reports and appeared to excessively rely upon Plaintiff's subjective reports. (Id.) This determination relied upon a treatment report from January 2019, shortly after the Date Last Insured, where Dr. Godhwani wrote Plaintiff reported feeling better with vitamin D and was experiencing less pain even though she had finished steroids and was only taking "prn Aleve." (Id.) The ALJ concluded Dr. Godhwani's opined limitations, i.e., stating Plaintiff would be off task for more than twenty-five percent of the workday and could sit, stand, or walk for only up to two hours, were overly restrictive. (Id.) However, the ALJ did find that limiting Plaintiff to lifting up to twenty pounds occasionally and ten pounds frequently was consistent with the medical opinions of both

16

Dr. Prashad and Dr. Godhwani and incorporated this limitation into her decision. (Id.)

In addition to the medical records of Dr. Prashad and Dr. Godhwani, the ALJ considered prior administrative medical findings; these prior findings had been determined to be insufficient evidence to decide upon Plaintiff's condition; the ALJ declined to give them any evidentiary weight. (R. at 16.) The ALJ also took into consideration the opinion of Plaintiff's Husband, which she found to be unpersuasive as it constituted a subjective opinion by a non-medical source. (Id.)

Finally, at step five, based upon the testimony of the VE, the ALJ determined Plaintiff could not perform past relevant work as actually or generally performed. (R. at 17.) However, the ALJ found there were jobs within the United States economy that Plaintiff could perform including cashier, office helper, and ticket taker. (Id. at 18.) Because the ALJ found the Plaintiff could make a successful adjustment to other work existing in significant numbers in the economy, she determined Plaintiff not disabled. (Id.)

III. Analysis

Plaintiff advances several arguments before this Court, including: (1) the ALJ failed to both properly evaluate the opinion evidence of Dr. Prashad and Dr. Godhwani and adequately explain the supportability and consistency factors used in her

17

determination; (2) the ALJ failed to properly evaluate Plaintiff's RFC; (3) the ALJ failed to properly assess Plaintiff's disabling symptoms; and (4) the ALJ failed to properly incorporate the additional limitations as opined by Plaintiff's rheumatologists into her RFC determination and, in doing so, failed to fully account for Plaintiff's limitations in making her determination of whether Plaintiff could perform work that existed in significant numbers in the national economy. (See Pl. Support Memo, ECF No. 14, in toto.)

A.   The ALJ's Evaluation of the Opinion Evidence

Plaintiff argues the ALJ failed to properly evaluate the opinion evidence proffered by Dr. Prashad, alleging the ALJ "cherrypicked" through the record and substituted her own opinion for that of Dr. Prashad's. (See Pl. Support Memo at 18.)   To support her position, Plaintiff attests the ALJ ignored lab results showing out-of-range results, which in the same report stated Plaintiff's medication was working well until recently.  (Id.) Further, Plaintiff alleges that the ALJ ignored the mutual support Dr. Godhwani's opinion provided for Dr. Prashad's opinion.  (See id. at 19.)  In doing so, Plaintiff states the ALJ did not properly weigh the supportability and consistency factors required to render a decision.  (Id.)

Prior to March 2017, courts were required to follow the treating physician rule, which required the ALJ to give controlling

weight to a treating physicians opinion when supported by medically acceptable clinical and laboratory diagnostic techniques and other consistent substantial evidence.  See 20 C.F.R. § 416.927(c)(2). However, new regulations require an ALJ to not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from medical sources.  See 20 C.F.R. § 404.1520(c). Instead, evidentiary weight is now to be assess pursuant to five factors: (1) supportability; (2) consistency; (3) relationship with claimant; (4) specialization; and (5) other factors which may support or contradict a medical opinion or administrative finding. See 20 C.F.R. § 404.1520c(c)(1)-(5).  Of these factors, the two most important when examining the persuasiveness of medical opinions are the supportability and consistency factors.  See 20 C.F.R. § 404.1520c(b)(2).  While an ALJ may, but is not required to, explain how she considered the remaining factors, the ALJ must articulate how factors one and two, the supportability and consistency factors, have been considered.  Id.

The supportability factor requires that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  And,

the consistency factor requires that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."   20 C.F.R. § 404.1520c(c)(2).

The Court agrees with the Commissioner that the ALJ has properly considered and articulated the supportability and consistency factors as required by the Social Security Regulations.   The ALJ evaluated the opinion evidence provided by both Dr. Prashad and Dr. Godhwani by comparing their opinions with conflicting contemporaneous medical reports provided by each doctor.   See Richardson v. Saul, No. 19-CV-3603, 2021 WL 3741505, at *3 (E.D.N.Y. Aug. 24, 2021) ("It is, . . . 'up to the agency, and not this court, to weigh the conflicting evidence in the record.'" (quoting Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998)).

The ALJ based her persuasiveness judgment on multiple inconsistent contemporaneous medical reports including: (1) reports indicating Plaintiff was feeling well on her medication until a recent flare; (2) reports Plaintiff was controlling her symptoms with vitamin D and "prn Aleve"; and (3) reports Plaintiff's morning stiffness and swelling was reduced. (R. at 15.)   ALJs are to weigh the opinion evidence with inconsistent

20

conflicting evidence in the record to determine persuasiveness. See Richardson, 2021 WL 3741505, at *3; see also Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record." (citing Miller v. Chater, 99 F.3d 972, 978 (10th Cir. 1996)). Here, the ALJ's articulated comparisons of these reports to the opinion evidence provided sufficient explanation of the supportability and consistency factors as required by the Social Security Regulations. See 20 C.F.R. § 404.1520c(b)(2).

In addition, Plaintiff's contention that the ALJ cherrypicked the record to substitute her own opinion over Dr. Prashad's is unavailing. An ALJ may not cherry pick from a medical opinion by crediting evidence that supports the ALJ's findings while simultaneously ignoring conflicting evidence from the same source. See Artinian v. Berryhill, No. 16-CV-4404, 2018 WL 401186, at *8 (E.D.N.Y. Jan. 12, 2018) ("Federal courts reviewing administrative social security decisions decry 'cherry picking' of relevance evidence, which may be defined as inappropriately crediting evidence that supports administrative conclusions while disregarding differing evidence from the same source."). However, "[it] is entirely proper for the ALJ to only credit portions of medical source opinions, or weigh different parts of the same opinion differently." Martinez v. Kijakazi, No. 22-CV-9215, 2023 WL 8361356, at *9 (S.D.N.Y. Dec. 4, 2023) (alteration in original)

(quoting <u>Marcano v. Comm'r of Soc. Sec.</u>, No. 20-CV-4230, 2021 WL 5315703, at *19 (S.D.N.Y. Nov. 16, 2021)), <u>report and recommendation adopted sub nom.</u> <u>Martinez v. O'Malley</u>, No. 22-CV-9215, 2024 WL 422291 (S.D.N.Y. Jan. 15, 2024).   There was no such cherry-picking here. For example, the ALJ did not ignore Plaintiff's lab results as she noted Plaintiff had rheumatoid arthritis.  (R. at 15.)  Further, the ALJ <u>added</u> a manipulative limitation consistent with the same treatment notes even when Dr. Prashad declined to note any manipulative limitations in his own opinion evidence.  (<u>Id.</u> at 13, 15.)  In doing so, the ALJ did not "disregard differing evidence."  <u>See</u> <u>Artinian</u>, 2018 WL 401186, at *8.  Accordingly, the ALJ sufficiently evaluated the opinion evidence, explained the supportability and consistency factors, and did not improperly cherry pick the record.

    B.    <u>The ALJ's Evaluation of Plaintiff's RFC</u>

        Next, Plaintiff argues the ALJ did not cite medical support for the limitations assessed and is not qualified to assess Plaintiff's RFC on the basis of bare medical findings.  (Pl. Support Memo at 20-23.)  Plaintiff further claims the ALJ improperly evaluated Plaintiff's RFC and should have ordered consultive examinations, the lack of which created a gap in the record.  (<u>Id.</u>)  The Court disagrees.

        The RFC determination is an issue reserved for the ALJ wherein the ALJ is responsible for "assess[ing] [a claimant's]

[RFC] based on all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a); see also 20 C.F.R. § 404.1546(c). "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in [her] decision, [she is] entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013). If any of the evidence in Plaintiff's record is inconsistent, the ALJ will consider the relevant evidence and see if she can determine whether Plaintiff is disabled based upon the evidence presented. 20 C.F.R. § 404.1520b(b)(1).

When an ALJ believes evidence is inadequate to make a disability determination, the ALJ may ask for additional medical evidence from expert medical sources. See 20 C.F.R. § 404.1513a(b)(2); 20 C.F.R. § 404.1520b. However, the decision whether to seek the opinion of a medical expert is discretionary. Lupo v. Saul, No. 17-CV-1722, 2020 WL 6873438, at *10 (E.D.N.Y. Nov. 23, 2020) ("The regulations state only that where the adjudicator believes the evidence is inadequate to make a disability determination, the decision of whether to recontact a treating source is discretionary."); 20 C.F.R. § 404.1513a(b)(2); 20 C.F.R. § 404.1520b. As such, an ALJ has no obligation to contact a consultative examiner, state agency medical consultant, or treating physician. Lupo, 2020 WL 6873438, at *10.

23

To start, the ALJ cited to the medical record in her determination of Plaintiff's RFC. (R. at 15.) The ALJ stated the record opinion evidence and treatment notes established Plaintiff's swelling and pain in her hands and fingers, knee pain and stiffness, difficulty waking up, elbow pain, and challenges straightening her arm out due to stiffness. (Id.) These cited reports supported the ALJ's determination to limit the Plaintiff in her handling, manipulating, and feeling. (Id.) The ALJ also incorporated the consistent portions of the opinion evidence into her decision regarding limiting Plaintiff to lifting up to twenty pounds occasionally and ten pounds frequently. (Id.)

Plaintiff's contention that the ALJ was not qualified to assess Plaintiff's RFC is also unavailing. While Plaintiff contends the ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, courts have held that "where the medical record is sufficiently developed [], the ALJ nonetheless can make an informed decision as to the claimant's RFC." See Cira v. Comm'r of Soc. Sec., No. 15-CV-6704, 2017 WL 4339480, at *9 (E.D.N.Y. Sept. 29, 2017) (citing Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013) ("[R]emand is not always required when . . . the record contains sufficient evidence from which an ALJ can assess the petitioner's [RFC].")). As the record here consisted of both opinion evidence and a bevy of

24

contemporaneous medical records, the ALJ reasonably made an informed assessment of the Plaintiff's RFC.

Finally, as to Plaintiff's argument that the ALJ created a gap in the record by failing to order consultive examinations, the ALJ is under no such obligation to recontact treating sources or order consultive examinations as long as she could reasonably make a determination based upon the evidence already presented. See Lupo, 2020 WL 6873438, at *10; 20 C.F.R. § 404.1513a(b)(2); 20 C.F.R. § 404.1520b. The ALJ is not required to develop the record any further when the record evidence is already "adequate for [the ALJ] to make a determination as to disability." Janes v. Berryhill, 710 F. App'x 33, 34 (2d Cir. 2018) (alteration in original).

Plaintiff contends that, because the state agency physicians determined the record was insufficient to determine disability, the ALJ erred in failing to request new consultative evidence. (See Pl. Support Memo at 22.) However, the state agency determination stemmed from the fact that there was no file explaining or describing the functional ability of Plaintiff's hands. (R. at 86.) The ALJ circumvented this issue by including an extra limitation, i.e., limiting Plaintiff in her handling, manipulating, and feeling. (Id. at 15.) As such, the record as presented to the ALJ was substantially sufficient to determine the remainder of Plaintiff's RFC. Furthermore, as the Commissioner

properly points out, Plaintiff does not claim the ALJ was missing any treatment records. (See generally Pl. Support Memo; see Comm'r Support Memo, ECF No. 16-1, at 20.) Given the substantial evidence presented, the record was adequate for the ALJ to make a determination as to RFC; therefore, remand is not warranted to further develop the record.

C. The ALJ's Evaluation of Plaintiff's Disabling Symptoms

Plaintiff argues the ALJ's credibility determination of Plaintiff's subjective testimony lacked proper grounds and does not withstand analysis. (Pl. Support Memo at 24.) A district court does not have reason to "second-guess the credibility finding . . . where the ALJ identified specific record-based reasons for [her] ruling" and where the finding is supported by substantial evidence. Stanton v. Astrue, 370 F. App'x 231, 234 (2d Cir. 2010). Thus, "[a]n ALJ's credibility finding as to the claimant's disability is entitled to deference by a reviewing court." Rivera v. Berryhill, No. 17-CV-0991, 2018 WL 4328203, at 10 (S.D.N.Y. Sept. 11, 2018); Selian v. Astrue, 708 F.3d 409, 420 (2d Cir. 2013) ("The ALJ set forth specific reasons for why she found [claimant's] testimony not credible and an ALJ's credibility determination is generally entitled to deference on appeal.").

Further, "[w]hen determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the

claimant's subjective complaints without question. . . ." Sutton
v. Comm'r of Soc. Sec., No. 20-CV-3441, 2022 WL 970748, at *8
(E.D.N.Y. Mar. 31, 2022) (quoting Genier v. Astrue, 606 F.3d 46,
49 (2d Cir. 2010)).  However, an ALJ's "finding that [a] witness
is not credible must . . . be set forth with sufficient specificity
to permit intelligent plenary review of the record." Williams v.
Bowen, 859 F.2d 255, 260–61 (2d Cir. 1988).

        Here, the ALJ determined Plaintiff's "statements
concerning the intensity, persistence, and limiting effects of
[her] symptoms are not entirely consistent with the medical
evidence and other evidence in the record for the reasons explained
in this decision." (R. at 14.)  The ALJ then supported her
determination by citing to multiple points from the medical record:
(1) Plaintiff reported feeling well on Simponi until a recent
flare-up in symptoms; (2) Plaintiff reported that morning
stiffness was reduced to thirty minutes to one hour and that
swelling had decreased; and (3) in January 2019, a few days after
the Plaintiff was last insured, she reported feeling better with
vitamin D and was experiencing less pain even though she had
finished steroids and was only on "prn Aleve." (Id. at 15.)  The
ALJ then finalized her statement by noting those reports were
"inconsistent with one alleging disability" and instead are
"consistent with one whose impairments were largely controlled
with medication." (Id.)

27

Thus, since the ALJ's credibility finding was based upon the record, this Court cannot second-guess the credibility findings of the ALJ, who identified specific record-based reasons for her ruling. See Stanton, 370 F. App'x at 234. Further, as the Court identifies substantial evidence in the record to support the findings of the ALJ, this determination precludes remand. See id.

D. The ALJ's Analysis that Plaintiff Could Perform Work Existing in Significant Numbers

Finally, Plaintiff argues the ALJ failed to give a complete hypothetical to the VE. (Pl. Support Memo at 26-27.) She contends the proffered hypothetical was incomplete because the ALJ did not find the opinion evidence proffered by Dr. Prashad or Dr. Godhwani persuasive and therefore did not include all limitations as opined by both doctors. (Id.) As discussed, the ALJ evaluated the opinion evidence and properly incorporated the limitations she found persuasive into her RFC assessment, and thus into the resulting hypotheticals. (See supra Section III.A-C.) Therefore, remand is not appropriate.

<u>CONCLUSION</u>

For the stated reasons, **IT IS HEREBY ORDERED that** Plaintiff's motion (ECF No. 13) is **DENIED,** and the Commissioner's cross-motion (ECF No. 16) is **GRANTED.** The Clerk of Court is directed to enter judgment accordingly and mark this case CLOSED.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: February 14, 2025
       Central Islip, New York